UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Larry Davis, Sr., | Civil No. 03-5017 (JRT/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Fidelity Cleaning Co., | |
| Defendant. | |

Larry Davis, for Plaintiff.
Joseph Schmitt, for Defendant.

**THIS MATTER** was set for a hearing before the undersigned United States Magistrate Judge on May 6, 2005, on Defendant's Motion for Summary Judgment [#42]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that Defendant's Motion for Summary Judgment be Granted.

**I. BACKGROUND**

Defendant Fidelity Cleaning Co.[1] ("Fidelity") is a janitorial company that hires cleaners to work in office buildings after hours throughout the Twin Cities. (See Affidavit of Robert Winters ("Winters Aff."), ¶ 2). Defendant Fidelity employs cleaners to fill positions at particular facilities as needed. (Id., ¶ 3). Around July 2002, Plaintiff Larry Davis ("Davis") submitted an application to Fidelity. (See Affidavit of Joseph G. Schmitt, ("Schmitt Aff."), Ex. A, Transcript of Deposition of Larry Davis ("Davis Depo"), p. 37; Ex. B, Application of Employment). Plaintiff filled out a

---

[1] Later identified as Fidelity Building Services, Inc.

second application in October 2002, and was granted employment at Defendant's "Guidant" facility. (See Affidavit of Joseph G. Schmitt, ("Schmitt Aff."), Ex. A, Transcript of Deposition of Larry Davis ("Davis Depo"), p. 37; Ex. C, Application of Employment; Ex. D, Offer of Employment and Orientation Notification). Defendant scheduled an orientation for Plaintiff and other newly hired cleaners on October 23, 2002 at 2:30 p.m. (See Ex. D, Offer of Employment and Orientation Notification). On that day, Plaintiff arrived about one hour early for the orientation and it was suggested that he could go to the Wal-Mart just down the street to occupy the time. (See Complaint; Schmitt Aff., Ex. A, Davis Tr., p. 60; Winters Aff., ¶ 4). When Plaintiff returned to Fidelity he was late for the orientation. (See Winters Aff., ¶ 4). Plaintiff had a brief conversation with Robert Winters, Fidelity's Director of Human Resources before he left. (See Schmitt Aff., Ex. A, p. 63-64; Winters Aff., ¶ 5). Plaintiff did not receive the job and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 23, 2002. (See Schmitt Aff., Ex. F). In the EEOC Charge, Plaintiff alleged discrimination based on race, national origin, age, gender, disability, and in retaliation for making statements about filing charges with the EEOC. (Id.). On August 14, 2003, the EEOC concluded that there was no probable cause to support Plaintiff's claims. (Id., Ex. G).

Plaintiff then initially filed a Complaint in this case and moved for *in forma pauperis* ("IFP") status on August 19, 2003 [#1 and #2]. His request was denied on September 10, 2003 [#6] because the Complaint failed to state a claim on which relief could be granted, and his IFP application had not been properly completed. Plaintiff was given the opportunity to file an Amended Complaint, which he did on September 26, 2003 [#8]. The Amended Complaint seems to allege that Defendant only "pretended employment" which created "emotional tension." (See Complaint). While still

somewhat unclear, presumably Plaintiff is making the same allegations contained in his EEOC charge: discrimination on the basis of (1) national origin; (2) an alleged disability; (3) his race; (4) his gender; (5) his age; and (6) in reprisal for alleged protected conduct. (See Schmitt Aff., Ex. A, p. 70).

Since filing his Complaint, Plaintiff has stated that no one said or did anything that led him to believe he was discriminated against based on his gender, age, disability, race or national origin. (See Schmitt Aff., Ex. A, p. 70-74). Plaintiff also acknowledged that he did not have "any reason to believe, any fact or reason to support a belief, that fidelity discriminated against" him based on his disability, race, or national origin. (Id.). Defendant also contends that in addition to arriving late for the orientation, Plaintiff informed Robert Winters that he no longer wanted to work at the Guidant Building, the building for which he had been hired, but rather, he wanted to work at the airport, a building Fidelity did not provide cleaning for. (Winters Aff., ¶ 5). Furthermore, the evidence also shows that Plaintiff made misrepresentations in his applications for employment with Fidelity regarding his previous employers and about his criminal convictions. (Winters Aff., ¶ 7; Schmitt Aff., pp. 6, 12, 40, 44-47).

## II. STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Summary judgment permits courts to issue a judgment as a matter of law, on the merits, and without trial, as long as there are no genuine issues of material fact. Fed.R.Civ.P. 56; see also Reich v. Conagra, 987 F.2d 1357, 1359 (8th Cir. 1993). Summary judgment is

appropriate when the moving party establishes, based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 322-23.  When considering a motion for summary judgment, the moving party bears the burden of proof, and a court should construe all evidence in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  However, the party opposing summary judgment may not "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249-56 (noting that if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted); <u>see also</u> Fed. R. Civ. P 56(e).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson</u>, 477 U.S. at 247-48.  Thus, summary judgment is proper when the non-moving party fails to provide the Court with specific facts indicating that there is a genuine issue of material fact for trial.  <u>Maxwell v. K-Mart Corp.</u>, 844 F. Supp. 1360, 1365 (D.Minn. 1994); <u>Rainforest Café, Inc. v. Amazon, Inc.</u>, 86 F.Supp.2d 886, 893 (D.Minn. 1999).

A genuine issue of material fact only exists if: (1) there is a disputed fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine.  <u>RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.</u>, 49 F.3d 399, 401-02 (8th Cir. 1995).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

## III. LEGAL ANALYSIS

This Court concludes that there are no genuine issues of material fact regarding Plaintiffs' claims of discrimination based on race, national origin, age, gender, disability and reprisal under Title VII of the Civil Rights Act of 1964 ("Title VII"), Americans with Disabilities Act ("ADA") or the Minnesota Human Rights Act ("MHRA"). To establish any of these claims, Plaintiff must meet the McDonnell Douglass burden-shifting framework. McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1983); St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Products, Inc., 580 U.S. 133 (2000); Desert Palace, Inc. v. Costa, 539 U.S. 90 2003); see also, Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (Title VII); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428 (Minn.1983) (MHRA).

Using this analysis, a plaintiff must first establish a *prima facie* case of discrimination. McDonnell Douglas Corp., 411 U.S. 792. If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show it had a legitimate, nondiscriminatory reason for its actions. Id.; McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir. 1998). A plaintiff must then present evidence that establishes a genuine issue of material fact as to whether the defendant's reasons are pretextual, and creates a reasonable inference that the employment decision was an act of intentional discrimination. Id.

In this case, Plaintiff is unable to establish a *prima facie* case for disability or reprisal discrimination. In addition, all of Plaintiff's claims of discrimination inevitably fail because Plaintiff has failed to establish a genuine issue of material fact that Defendant's proffered reason for not hiring Plaintiff were pretextual. As such, this Court recommends that Defendant's Motion for Summary Judgment be Granted.

**A.     Plaintiff Has Not Established a *Prima Facie* Case of Reprisal or Disability Discrimination.**

There is no genuine issue of material fact that Plaintiff is unable to establish a *prima facie* case of either reprisal or disability discrimination. As such, both claims should be dismissed.

**1.     Reprisal Discrimination.**

Plaintiff alleges that he was discriminated against for threatening to file charges against Defendant with the EEOC. (See Schmitt Aff., Ex. F). To establish a *prima facie* case of reprisal discrimination under either Title VII or the MHRA, Plaintiff must establish: (1) that he engaged in a statutorily protected activity; (2) that Defendant Fidelity took an adverse employment action against him; and (3) that a causal connection exists between the two events. Rheineck v. Hutchinson Tech., Inc., 261 F.3d 751, 757 (8th Cir. 2001) (Title VII); Smith v. DataCard Corp., 9 F.Supp.2d 1067, 1080 (D.Minn. 1998) (MHRA).

Plaintiff has failed to make a *prima facie* case of reprisal discrimination because he is unable to demonstrate a causal connection between his threat to file a claim with the EEOC and Defendant not hiring him. Although Plaintiff initially contended that he told Defendant he was contacting the EEOC before the decision not to hire him was made, he later withdrew that allegation and clarified that he never mentioned bringing a charge of discrimination with the EEOC until after he was not given a position with Defendant. (See Schmitt Aff, Ex. A, Davis Tr., p. 84-85). As such, Plaintiff acknowledges that Defendant was not aware of any protected conduct Plaintiff alleges he had taken before they decided to withdraw the offer of employment. Such adverse employment action could not have been causally connected to the alleged protected conduct as Defendant did not know about the protected conduct. See Simon v. Simmons Foods, Inc., 49 F.3d 386, 389 (8th Cir.1995) (a plaintiff must show that "the employer had actual or constructive knowledge of the protected

conduct" in order to establish a prima facie case of retaliation); Wolff v. Berkley, Inc., 938 F.2d 100, 103 (8th Cir.1991) (a causal link between statutorily protected activity and an adverse employment action "does not exist if the employer is not aware of the employee's statutorily protected activity"). Plaintiff is unable to make a *prima facie* claim of reprisal discrimination.

**2.      Disability Discrimination.**

Plaintiff also alleges that he was discriminated against on the basis of an alleged disability. To establish a *prima facie* claim of disability discrimination when being hired, Plaintiff must show: (1) that he is disabled within the meaning of the ADA or MHRA; (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that he suffered an adverse employment action as a result of his disability. Conant v. City of Hibbing, 271 F.3d 782, 784 (8th Cir. 2001). To establish a disability within the meaning of the ADA, Plaintiff must show that he was substantially limited in his ability to perform one or more major life activities. Id. Claims of disability discrimination under the MHRA are analyzed under the same standard as claims under the ADA. Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001); Treanor v. MCI Telecommunications Corp., 200 F3d 570, 574 (8th Cir. 2000). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff has specifically testified that he is not limited in the manner set forth by the ADA or the MHRA. (See Schmitt Aff, Ex. A, Davis Tr. p. 86-87 ("Q: My question for you, Mr. Davis, is: Does your impairment, and by that I mean your mental condition, substantially affect your ability to perform one or more major life activities? A: No, sir. Q: No, it does not? A: No, sir.")). Plaintiff is not able to demonstrate that he is disabled within the meaning of the ADA or MHRA. As such,

7

Plaintiff has failed to establish a *prima facie* case of disability discrimination.

**B.     Plaintiff Cannot Establish Pretext.**

Even if Plaintiff could establish a *prima facie* case for his claims, all of Plaintiff's claims eventually fail at the pretext stage. To establish pretext, Plaintiff must present evidence that establishes a genuine issue of material fact as to whether the defendant's reasons are pretextual, and creates a reasonable inference that the employment decision was an act of intentional discrimination. Fisher v. Pharmacia and Upjohn, 225 F.3d 915, 921 (8th Cir. 2001); McCullough, 140 F.3d at 1127; see also Tatom v. Georgia Pacific Corp., 228 F.3d 926, 932 (8th Cir. 2001)(there must be evidence on which to base a reasonable belief that the protected status was a determining factor in the adverse employment action).

**1.     Evidence of Pretext.**

Plaintiff has not presented evidence that establishes a genuine issue of material fact as to the truth or falsity of Defendant's reason for not hiring him. Indeed, Plaintiff's version of the events lacks the consistency necessary to challenge Defendant's proffered reason for not hiring him. Defendant states that Plaintiff was not hired because he arrived late for the scheduled orientation. (Winters Aff. ¶ 5 ("Fidelity has a practice of not hiring cleaners who fail to arrive on time for their orientation.... I made the decision not to hire Mr. Davis. My sold motivation was Mr. Davis' failure to arrive at orientation on time.")). The evidence Plaintiff offers to contest Defendant's proffered reason is inconsistent if not impossible, and it fails to establish a genuine dispute as to the veracity of Defendant's proffered reason. Plaintiff's deposition testimony regarding what time he returned from Wal-Mart to Fidelity varies from 2 p.m., 2:30 p.m., to "a little after 2, but it wasn't 3 o'clock." (Schmitt Aff., Ex. A, Davis Tr. 60-62, 95-96, 98). At one point, Plaintiff testifies that he first arrived

at Fidelity for the orientation at 1:30 p.m., went to Wal-Mart for 20 to 25 minutes, and returned to Fidelity around 2:30. (Schmitt Aff., Ex. A, Davis Tr. p. 60–62). Later, Plaintiff testifies that he first arrived at Fidelity at 1:00 p.m., went to Wal-Mart for 20 to 25 minutes, and returned to Fidelity at 2:30. (Id., p. 95-96. Then Plaintiff states that he returned at 2:00 for the orientation. (Id., p. 98). Finally he testifies that he returned "a little after 2, but it wasn't 3 o'clock." (Id.). When questioned about his impossible chronology, Plaintiff first admits that if he initially arrived at 1:30 p.m. and only spent 20-25 minutes at Wal-Mart, he wouldn't have returned to Fidelity before 2:30 p.m. as stated. (Id., p. 62). However, when questioned again about his improbable chronology of events, Plaintiff adamantly resorted back to a version of his original statement:

> Q: "Earlier today you testified that you arrived at 1:30 p.m. Was it 1:30 p.m. or 1 p.m."
> A: "I would say around 1 p.m."
> Q: "You testified earlier today that you walked over to - - Drove over to Wal-Mart and you were there between 25 and 30 minute, right?"
> A: "Yes, Sir."
> Q: "And that you came back immediately afterwards, right?"
> A: "Yes, Sir."
> Q: "So if you went over to Wal-Mart for 25 to 30 minutes, and you came back, did you come back to Fidelity around 1:30?"
> A: "I came back around 2:30."
> Q: "So you must have been at Wal-Mart for More than 25-30 minutes?"
> A: "No, I was not, because it was my first time in there, and I didn't have a lot of money on me. I had about $16 on me."
> . . .
> A: "I'm certain I arrived back around the time for the orientation."
> Q: "That was 2 p.m.?"
> A: "Yes, Sir."
> Q: "Did you arrive at 2:30 p.m. or 2 p.m.?"
> A: "A little after 2, but it wasn't 3 o'clock."

Id., p. 95-96, 98. Furthermore, Plaintiffs specific testimony that he returned after 2 p.m., but before 3 p.m., (Id., p. 98) does not conflict with Defendant's proffered reason for not hiring Plaintiff, that he "did not return until nearly 3:00 p.m., well after the orientation had started." (Winters Aff., ¶ 4).

9

### 2. Evidence Creating a Reasonable Inference of Discrimination.

Plaintiff has also not presented any evidence that creates a reasonable inference that the job offer was withdrawn was based on any sort of discrimination. Indeed, Plaintiff admits several times that he has no evidence that would establish an inference that discrimination played a role in Defendant's decision to not hire him.

In Defendant's first set of Interrogatories, Defendant asks the following: "Describe in detail the causes of action that you intend to assert against Fidelity, including an identification of all statute(s) that you claim Fidelity violated (if any) and the facts in support of your claims." (Schmitt Aff., Ex. H, Interrogatory No. 12). Plaintiff responded: "Title VII Civil Rights Act, American with Disabilities Act, 42 U.S.C.A. section 2002, Breach of contract, MSA section 363.03, 363.14." (Id., Plaintiff's Answers to Interrogatories, Set One). Plaintiff did not provide a full list of his claims and did not provide any evidence that supported the claims of discrimination he did list. Plaintiff later amended his answer to Interrogatory No. 12, testifying that he was discriminated against only on the basis of his race and disability. (Id., Ex. I, Supplemental Response to Interrogatory No. 12). This amended answer drops his other claims and still provides no evidence to support an inference of the types of discrimination he does list.

Most telling, however, is Plaintiff's testimony during his deposition where he acknowledges that he has no reason to believe that any of the types of discrimination he claims played a role in Defendant's decision not to hire him. When asked about evidence that would support his claim of gender discrimination, Plaintiff's answers are not only confusing but reveal he has no evidence that he was discriminated against on the basis of gender other than the fact that he is male.

> Q: Did anyone say or do anything that led you to believe that you were discriminated against based on your gender?

10

> A: No, sir.
> Q: Do you have any reason to believe, as you sit here today, that you were discriminated against based on your gender?
> A: Do I believe - -
> Q: Do you have any reason, any fact or reason that you can offer to support a belief that you were discriminated against based upon gender?
> A: My color.
> Q: How does that support a belief that you were discriminated against based on your gender, male?
> A: Oh, because I'm a male Cherokee Indian and I'm searching for my roots.
> Q: The fact that you are a male Cherokee Indian, are there any other reasons or facts that support a belief that you were discriminated against based upon your gender?
> A: My Cherokee Complexion.
> Q: Anything else?
> A: No.

(Schmitt Aff., Ex. A. Davis Tr., p. 71).

Plaintiff next testifies to his limited basis to support an age discrimination claim:

> Q: Did anyone do or say anything that led you to believe that they were discriminating against you based on your age?
> A: No.
> Q: Do you have any reason to believe, any fact or reason that you can articulate here today, to support a conclusion that you were discriminated against based upon your age."
> A: Personally I look at the males of my origins in Minnesota, for example, that's holding a supportive janitorial position through the whole metropolitan area.
> Q: I'm sorry, I don't understand. How does that support a conclusion that you were discriminated against based on your age?
> A: I guess that I feel having been in the military, based on my references - - based on my experience, based on me being able to go into an office environment and do work and to do it on a long-term basis, but not being able to find permanent position, it raises personal concerns for me, personally.
> Q: Any other fact or reason to believe that you were discriminated against based on your age?
> A: I feel that based on my experience that I'm entitled to a position, maintenance position.
> Q: And therefore, if you didn't get one, it must have been because of your age?
> A: I can't say that I'm too old to work a stable janitorial 40-hour-a-week job on a regular basis, I can't say that I'm too old.
> Q: But what I'm wondering is: What reason do you have to believe that Fidelity

11

> Building Services discriminated against you based upon your age? Do you have any reason to believe that they discriminated against you based on your age?
> A: I would think that the majority of the hires are people younger - - a lot of them are accommodations for people that are - - I would think that they're probably younger than me. That's not necessarily true.
> Q: Any other reason?
> A: No.

(Id., pp. 72-73). Plaintiff basically alleges that he is entitled to a position based on his age and experiences. However, that Plaintiff was qualified does not establish pretext or an inference of discrimination. While alleging that younger people were hired, Plaintiff does not provide any evidence to support this allegation or that he was at all similarly situated to the other applicants. Finally, Plaintiff is unable to provide evidence that Defendant was even aware of Plaintiff's age when making the decision not to hire him. Without demonstrating that Defendant knew his age, Plaintiff cannot support an age discrimination claim.

Plaintiff's claim of reprisal discrimination faces the same dilemma. As argued above, Plaintiff acknowledged that Defendant was not aware of Plaintiff's contact with the EEOC, or any other protected conduct, until after Defendant had withdrawn Plaintiff's job offer. (Id., pp. 84-85). Plaintiff cannot support a claim of reprisal discrimination without establishing that Defendant's knew of the alleged protected conduct before they took the adverse employment action.

Similarly, Plaintiff cannot support any inference of disability discrimination because he concedes that Defendants were not aware of his disability when they decided not to hire him. (Id., p. 83). Plaintiff also acknowledges he has no evidence to support his disability discrimination claim:

> Q: Did anyone doe or say anything that led you to believe that they were discriminating against you based on your disability?
> A: No, sir.
> Q: Do you have any reason to believe, any fact or reason to support a belief, that Fidelity discriminated against you based on your disability?

> A: No, sir.

(Id., p. 73).

Plaintiff also admitted that he has no evidence to support even an inference of race or national origin discrimination.

> Q: . . . Did anyone do or say anything that led you to believe that fidelity was discriminating against you based on your race or national origin?
> A: No, sir.
> Q: Do you have any reason to believe that Fidelity discriminated against you based upon your race or national origin?
> . . .
> A: No

(Id., p. 74).

Finally, at one point during the deposition, it seems that Plaintiff is no longer alleging any discrimination claims.

> Q: What is your allegation in this lawsuit then?
> A: That I was provided a sheet, a worksheet, saying that I was hired, but I never actually carried out any of the job duties.
> Q: And I am simply asking , are you arguing that that occurred because of your disability, or is that not your argument? Are you not arguing that that occurred because of your disability?
> A: I'm not arguing that that occurred because of my disability.
> Q: Are you arguing that this occurred because of you gender or anything else?
> A: No.
> Q: So you are simply arguing that you had - - you were given the opportunity to perform this job, but you're not making an argument that that was based upon your gender or your disability or your age or your race or anything like that?
> . . .
> A: Correct, yes.

(Id., pp. 108-109).

Plaintiff is unable to establish a genuine issue of material fact as to the elements of any of his discrimination claims. As such, this Court recommends that Defendant's Motion for Summary Judgment [#42] be granted.

## III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment [#42] should be **GRANTED**.

Dated: July 8, 2005            s/ *Franklin L. Noel*
                               FRANKLIN L. NOEL
                               United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 27, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 27, 2005** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.